TSUGAWA LAU & MUZZI LLLC
A Hawaii Limited Liability Law Company
CHRISTOPHER J. MUZZI 6939
LEILA ROTHWELL SULLIVAN 7626
1132 Bishop Street, Suite 2400
Honolulu, Hawaii 96813
Telephone No.: (808) 531-0490
Facsimile No.: (808) 534-0202
Email: cmuzzi@hilaw.us
Email: lrs@hilaw.us

Special Counsel for Debtors/Plaintiffs
PACIFIC LINKS U.S. HOLDINGS, INC.;
HAWAII MVCC LLC; HAWAII MGCW LLC;
MDRE LLC; MDRE 2 LLC; MDRE 3 LLC;
MDRE 4 LLC; and MDRE 5 LLC

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware Corporation,<br><br>    Debtor. | Case No. 21-00094<br>Chapter 11<br>(Jointly Administered - Lead Case) |
| This Adversary Proceeding relates to:<br><br>ALL CASES | |
| PACIFIC LINKS US HOLDINGS, INC.; HAWAII MVCC LLC; HAWAII MGCW LLC; MDRE LLC; MDRE 2 LLC; MDRE 3 LLC; MDRE 4 LLC; and MDRE 5 LLC, | Adversary Proceeding No. 21-90009 |

50200/1/100333

Plaintiffs,

vs.

TIANJIN DINGHUI HONGJUN
EQUITY INVESTMENT
PARTNERSHIP (LIMITED
PARTNERSHIP),

Defendant.

**DEBTORS' MEMORANDUM IN OPPOSITION TO DEFENDANT
TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
<u>PARTNERSHIP'S MOTION TO DISMISS COMPLAINT</u>**

# TABLE OF CONTENTS

PAGE

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ................................................................................... ii

I.     INTRODUCTION ......................................................................................... 1

II.    ARGUMENT ................................................................................................... 2

    A.   The Presumption Against Extraterritoriality Does
        Not Apply to Fraudulent Transfer and Fraudulent
        Obligation Cases ....................................................................................... 2

    B.   The Presumption Against Extraterritoriality Does Not
        Require Dismissal Under the Facts of This Case Because
        the Relevant Conduct Occurred in the United States ........................... 3

        1.  The Hawaii Mortgages ..................................................................... 5

        2.  The Secured Guaranty Is an Obligation
             Incurred in the United States ........................................................... 7

        3.  The Membership Interest Pledge Agreement
             Is an Obligation Incurred in Hawaii ............................................... 9

        4.  The Framework Agreement Obligates Debtors
             to Perform Conduct in the United States that
             Results in Avoidable Transfers and Obligations ........................... 10

        5.  TDH's Filing of Proofs of Claims Against Each
             Debtor's Bankruptcy's Estate Effectively Moots Their
             Arguments That Application of the Fraudulent Transfer
             /Obligation Laws Are Being Applied Extraterritorially ............... 10

    C.   Plaintiffs Provided Sufficient Detail Regarding the Fraudulent
        Transfers/ Obligations ........................................................................ 11

D.    Plaintiffs Pleaded Sufficient Facts to Show Lack of
Reasonably Equivalent Value ............................................................13

E.    Plaintiffs Have Pleaded Facts Sufficient to Show Insolvency............17

F.    If the Court Determines that Any Facts Have Not Been
Sufficiently Pled, Plaintiffs Seek Leave to Amend the Complaint.....18

III.    CONCLUSION...............................................................................19

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE

Am. Sav. Bank, F.S.B. v. Chan,
        146 Hawaii 94, 456 P.3d 167 (Haw. 2020) ....................................................6

Begier v. Internal Revenue Serv.,
        496 U.S. 53, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) .................................4

Diamond v. Mesisca Riley & Kreitenberg, LLP (In re Castle Trading, Inc.),
        2017 Bankr. LEXIS 1462 (B.A.P. 9th Cir. 2017) ..........................................14

Diaz-Barba v. Kismet Acquisition, LLC,
        2010 U.S. Dist. LEXIS 50320,
        2010 WL 2079738 (S.D. Cal. May 20, 2010) ...............................................11

Estate of Rolloffs Haw., LLC v. Trashmasters, LLC (In re Rolloffs Haw., LLC),
        2019 Bankr. LEXIS 1920 (Bankr. D. June 25, 2019) ............................13, 15

Flemmer v. Weiner (In re Vill. Concepts, Inc),
        2015 Bankr. LEXIS 4100 (B.A.P. 9th Cir. Dec. 4, 2015)............................15

Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Research & Mgmt.),
        2015 Bankr. LEXIS 4145 (B.A.P. 9th Cir. Dec. 10, 2015)....................passim

Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger &
        Harrison LLP), 408 B.R. 318 (Bankr. N.D. Cal. 2009) ...............................15

Hasse v. Rainsdon (In re Pringle), 495 B.R. 447 (B.A.P. 9th Cir. 2013)...............15

Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon),
        153 F.3d 991 (9th Cir. 1998) .........................................................................5

In re Zetta Jet United States,
        2020 Bankr. LEXIS 3695 (Bankr. C.D. Cal. July 29, 2020).....................2, 3

In re Alsop, 22 B.R. 1017 (D. Alaska 1982) ............................................................6

In re FAH Liquidating Corp., 572 B.R. 117 (Bankr. D. Del. 2017).........................2

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 12   Filed 05/27/21   Page 5 of 26

In re French, 440 F.3d 145 (4th Cir. 2006)......................................................*passim*

In re Lyondell Chem. Co., 543 B.R. 127 (Bankr. S.D.N.Y. 2016) ...........................2

Leslie v. Bartamian (In re Mihranian),
    2017 Bankr. LEXIS 1802 (B.A.P. 9th Cir. June 26, 2017).....................11, 12

Lopez v. Smith, 203 F.3d 1122 (9th Cir. 2000)......................................................18

Morrison v. Nat'l Australia Bank Ltd., 561 U.S. 247 (2010) ..................................4

RJR Nabisco, Inc. v. European Community, 136 S. Ct. 2090 (2016)..................3, 4

Sec. Investor Protection Corp. v. Madoff Inv. Sec. LLC,
    480 B.R. 501 (Bankr. S.D.N.Y. 2012) ...........................................................2

United States v. Webb, 655 F.2d 977 (9th Cir. 1981) .............................................18

Wyle v. C.H. Rider & Family (In re United Energy Corp.,
    944 F.2d 589 (9th Cir. 1991) ........................................................................14

## STATUTES AND RULES

11 U.S.C. § 547    .....................................................................................2, 4

11 U.S.C. § 548    ...............................................................................*passim*

11 U.S.C. § 548(d)(1).........................................................................................5, 6

11 U.S.C. § 548(d)(2)(A).....................................................................................14

11 U.S.C. § 7015    ..................................................................................18

FRCP Rule 8    .........................................................................................11

FRCP Rule 9    .........................................................................................11

FRCP Rule 9(b)    .............................................................................*passim*

FRCP 12(b)(6)    .....................................................................................18

U.S. Bankruptcy Court - Hawaii  #21-90009  Dkt # 12  Filed  05/27/21  Page 6 of 26

FRCP 15(a)(2)  ...............................................................................18

HRS § 501-82 (2006)............................................................................6

HRS § 502-83 (2006) ..........................................................................6

HRS § 651C-3(a)  ...............................................................................14

HRS § 651C-4  ............................................................................*passim*

Debtors/Plaintiffs PACIFIC LINKS U.S. HOLDINGS, INC.; HAWAII MVCC LLC; HAWAII MGCW LLC; MDRE LLC; MDRE 2 LLC; MDRE 3 LLC; MDRE 4 LLC; and MDRE 5 LLC (collectively, "**Plaintiffs**"), by and through their counsel, respectfully submit their Memorandum in Opposition to Defendant Tianjin Dinghui Hongjun Equity Investment Partnership's ("**TDH**") Motion to Dismiss Complaint, filed April 23, 2021.

## I.    INTRODUCTION

In the Complaint, Debtors HAWAII MVCC LLC; HAWAII MGCW LLC; MDRE LLC; MDRE 2 LLC; MDRE 3 LLC; MDRE 4 LLC; and MDRE 5 LLC (collectively "**LLC Plaintiffs**") seek to avoid the transfer of an interest in property that occurred in Hawaii when a lien was created by the recordation of Mortgages in Hawaii.  See Complaint Counts III – VIII.

Additionally, all Debtors sought to avoid the Framework Agreement and the Secured Guaranty as fraudulent obligations, which documents purportedly create the obligations secured by the various mortgages.  See Complaint Counts I and II. Debtor PACIFIC LINKS U.S. HOLDINGS, INC. ("**PLUSH**") also sought to avoid as a fraudulent transfer or fraudulent obligation any transfers or obligations created by the Membership Pledge Agreement.  See Complaint at Count IX.

On April 30, 2021, TDH filed proofs of claims against each of the seven

Plaintiff's bankruptcy estates.[1]  See Exhibits 1 – 8, Proof of Claims Nos. 13, 14, 15, 16, 17, 18, 19 and 20 (without attachments).

## II.    ARGUMENT

### A. The Presumption Against Extraterritoriality Does Not Apply to Fraudulent Transfer and Fraudulent Obligation Cases.

Defendant TDH begins with the generic claim that the presumption against extraterritoriality applies to fraudulent transfer law.  However, as recognized in In re Zetta Jet United States, 2020 Bankr. LEXIS 3695, *30 (Bankr. C.D. Cal. July 29, 2020), which TDH heavily relies upon, "Neither the Supreme Court nor the Ninth Circuit has addressed whether §§ 547 or 548 apply extraterritorially and there is disagreement among the lower courts regarding the issue."  The court in Zetta stated that, "A minority of courts, which follow French, hold that Congress intended § 548 to apply extraterritorially.  See In re French, 440 F.3d 145 (4th Cir. 2006) (applying § 548 extraterritorially); In re Lyondell Chem. Co., 543 B.R. 127 (Bankr. S.D.N.Y. 2016) (same); In re FAH Liquidating Corp., 572 B.R. 117 (Bankr. D. Del. 2017) (same); Sec. Investor Protection Corp. v. Madoff Inv. Sec. LLC, 480 B.R. 501 (Bankr. S.D.N.Y. 2012) (same and accusing the Midland Euro court of "misunderstanding" French)."  The "majority of cases" that Zetta cites as holding that Congress did not intend § 548 to apply extraterritorially totals six cases.  Thus,

---

[1] Plaintiffs request that the Court take judicial notice of the docket in this case.

50200/1/100333

the difference between the majority view and the minority view as cited in <u>Zetta</u>, is two cases. Thus, the majority view could shift very easily.

In <u>Zetta</u>, the court summarized the ruling in <u>French</u> as follows:

> The Fourth Circuit found that 'several indicia of congressional intent' rebutted the presumption against extraterritoriality: 1) § 541 defines 'property of the estate' broadly as all of the debtor's property "wherever located," which includes foreign and domestic property; 2) § 548 allows a trustee to avoid certain transfers of "interest[s] of the debtor in property;" and 3) Congress 'incorporat[ed]' the language of § 541 to define what property a trustee may recover under his or her § 548 avoidance powers. [440 F.2d] at 151-52. According to the Fourth Circuit, Congress manifested its intent that § 548 apply to all property that, absent a prepetition transfer, *would have been* 'property of the estate,' before the transfer in question, even if the property was not "property of the estate" *now*. [440 F.2d] at 151 (emphasis in original).

2020 Bankr. LEXIS 3695, ** 31-32.

While Plaintiffs believe that this Court should adopt the reasoning of <u>French</u> and hold that the presumption against extraterritoriality has been rebutted, the Court need not reach that decision because this litigation does not involve extraterritorial application of the fraudulent transfer statutes. That is, the relevant conduct occurred in the United States.

## B. The Presumption Against Extraterritoriality Does Not Require Dismissal Under the Facts of This Case Because the Relevant Conduct Occurred in the United States.

In determining whether a case involves a foreign or domestic application of statutes, the United States Supreme Court has instructed that the "focus of a statute must be analyzed." <u>RJR Nabisco, Inc. v. European Community</u>, 136 S. Ct. 2090

(2016); <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 561 U.S. 247 (2010).  That is, "[i]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory." <u>RJR Nabisco</u>, 136 S. Ct. at 2101.  Plaintiffs generally agree that the focus of § 548 and HRS § 651C-4 "is the potential loss of assets and depletion of the bankruptcy estate caused by fraudulent transfers." Memorandum in Support at 14.  <u>See</u>, <u>e.g.</u>, <u>Begier v. Internal Revenue Serv.</u>, 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990) ("[T]he purpose of the avoidance provision [11 U.S.C. § 547] is to preserve the property includable within the bankruptcy estate—the property available for distribution to creditors."); <u>French</u>, 440 F.3d at 154 ("[T]he Code's avoidance provisions protect creditors by preserving the bankruptcy estate against illegitimate depletions.").  Plaintiffs add that the focus also extends to the potential loss and illegitimate depletion of a bankruptcy estate caused by fraudulent obligations.

Here, the relevant conduct occurred in the United States.  TDH, without citation to any legal authority, seeks to collapse the 6 alleged separate fraudulent transfers and 3 alleged fraudulent obligations into one "initial transfer", the Framework Agreement.  TDH erroneously argues that the Court must focus on the

4

initial transfer, which it claims is the Framework Agreement.  The fallacy of this argument is readily apparent because, pursuant to § 548, the Framework Agreement is not a "transfer"; it is, if valid, an obligation incurred.  Section 548(d)(1) provides that, "For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition."  Thus, the only fraudulent transfers alleged are the transfers of interests in Debtors' properties pursuant to the Mortgages.  Following TDH's argument that the Court should look to the initial transfer, for the reasons set forth below, the relevant conduct demonstrates a domestic application of § 548 and HRS § 651C-4.

### 1.  The Hawaii Mortgages

Plaintiffs HAWAII MVCC LLC, HAWAII MGCW LLC, MDRE LLC, MDRE 2 LLC, MDRE 4 LLC and MDRE 5 LLC each transferred an interest in their property when they each granted a lien to TDH on their Hawaii real properties[2] upon

---

[2] The district court in which a bankruptcy case is filed has exclusive *in rem* jurisdiction over all estate property.  Hong Kong and Shanghai Banking Corp., Ltd. v. Simon (In re Simon), 153 F.3d 991, 996 (9th Cir. 1998)

50200/1/100333

the recording of separate instruments entitled Mortgage, Assignment of Leases and Rents, Security Agreement, and Fixture Filing (each a "**Mortgage**"). Again, for purposes of § 548, "a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee[.]" 11 U.S.C. § 548(d)(1). Hawaii is a race-notice jurisdiction, so the transfer occurred at the time of recording each Mortgage. Am. Sav. Bank, F.S.B. v. Chan, 146 Hawaii 94, 103, 456 P.3d 167, 176, (Haw. 2020) (citing HRS § 501-82 (2006); HRS § 502-83 (2006)); see also In re Alsop, 22 B.R. 1017 (D. Alaska 1982) (transfer occurred when the deed of trust was recorded for fraudulent transfer purposes). It cannot be disputed that all of the transfers effected by the Mortgages occurred in the State of Hawaii. Therefore, there is no exterritorial application of fraudulent transfer laws.

Further, in each of the Mortgages, TDH agreed that:

> This Mortgage shall be governed by the laws of the State of Hawaii, irrespective of the application of any conflicts of laws rules. **Mortgagee and Mortgagor agree that the state and federal courts of the State of Hawaii shall have exclusive jurisdiction over <u>any disputes or litigation between Mortgagee and Mortgagor relating to this Mortgage</u>** . . .

Mortgages at § 4.4. (emphases added).

Thus, TDH agreed and always expected that any enforcement of or challenges relating to the Mortgages would occur in the state and federal courts of the State of

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 12   Filed  05/27/21   Page 13 of 26

Hawaii. The Court can take judicial notice that TDH registered with the State of Hawaii Department of Commerce and Consumer Affairs as a foreign partnership and designated an agent for service of process. See Exhibit 10. The obligation secured by each Mortgage arose out of the Secured Guaranty, which was purportedly agreed to in the Framework Agreement.[3] TDH exercised its rights under § 4.4, by filing a foreclosure action in Hawaii State Court. The Court can take judicial notice that TDH filed a foreclosure complaint in the Circuit Court of the First Circuit of the State of Hawaii on January 21, 2021, 1CCV-21-0000082 (the "**Foreclosure Action**") seeking to foreclose the Mortgages based on an obligation created by the Secured Guaranty. Exhibit 9. In the Foreclosure Action, the Debtor Defendants would have been able to challenge the validity and amount of the underlying obligation, as provided for in the Mortgages. There is no reason why a tortured argument that the fraudulent transfer laws are being applied extraterritorially should disturb what was always intended and agreed to by the parties, that all disputes related to the Mortgages be decided in the state or federal courts of Hawaii.

## 2. The Secured Guaranty Is an Obligation Incurred in the United States.

The Count to avoid the Secured Guaranty also does not involve the extraterritorial application of the fraudulent transfer laws because the focus of the

---

[3] Although not relevant to this Motion, the Framework Agreement was not signed by the manager of any of the Debtor limited liability companies, which are all manager-managed.

conduct occurred in the United States.  That is, the Secured Guaranty was signed by Plaintiffs in the United States; and it pledges collateral that is located in the United States, including Plaintiffs' real property in Hawaii; the membership interests of the LLC Plaintiffs, which are all Hawaii Limited Liability companies; and the stock of the corporate Plaintiff, PLUSH, which is a United States company.  All the obligations under the Secured Guaranty would be performed in the United States. Thus, the Court is not applying the fraudulent transfer/obligation laws extraterritorially because the relevant conduct predominantly occurred in the United States.

Further, Plaintiffs and TDH agreed that equitable relief under the Secured Guaranty could be had in the state and federal courts of Hawaii:

> . . . . Notwithstanding the foregoing, each Party hereby consents to and agrees that, in addition to any recourse to arbitration as set out above, any Party may seek an injunction or other equitable relief without the posting of a bond or other security, from a court, and in such event, the Parties submit to the sole and exclusive jurisdiction of the state and federal courts of the State of Hawaii.

Dk. 71-2, Secured Guaranty at § 17.

Here, Plaintiffs are seeking equitable relief from the bankruptcy court to avoid any obligation created under the Secured Guaranty as a fraudulent transfer.  For these reasons, Plaintiffs are seeking the domestic application of § 548 and HRS § 651C-4 as it applies to the avoidance of the fraudulent obligations under the Secured Guaranty.

8

### 3. The Membership Interest Pledge Agreement Is an Obligation Incurred in Hawaii.

Count IX to avoid the Membership Interest Pledge Agreement does not involve the extraterritorial application of the fraudulent transfer/obligation laws because the focus of the conduct occurred in the United States. The Membership Interest Pledge Agreement was signed in the United States by Plaintiffs. It purports to pledge membership interests in the LLC Plaintiffs, which are all Hawaii limited liability companies, to TDH. Thus, again, the Court is not applying the fraudulent transfer/obligation laws extraterritorially because the relevant conduct predominantly occurred in the United States.

Further, like with the Secured Guaranty, Plush and TDH agreed that equitable relief under the Membership Interest Pledge Agreement could be had in the state and federal courts of Hawaii:

> . . . . Notwithstanding the foregoing, each Party hereby consents to and agrees that, in addition to any recourse to arbitration as set out above, any Party may seek an injunction or other equitable relief without the posting of a bond or other security, from a court, and in such event, the Parties submit to the sole and exclusive jurisdiction of the state and federal courts of the State of Hawaii.

Membership Interest Pledge Agreement at § 13.5.

Here, PLUSH is seeking equitable relief from the bankruptcy court to avoid any obligation created under the Membership Interest Pledge Agreement as a fraudulent obligation. Thus, PLUSH is seeking the domestic application of § 548

and HRS § 651C-4 as it applies to the avoidance of the fraudulent obligations under the Membership Interest Pledge Agreement.

### 4. The Framework Agreement Obligates Debtors to Perform Conduct in the United States that Results in Avoidable Transfers and Obligations.

While the Framework Agreement may have been entered into by a number of foreign parties, purportedly along with Plaintiffs, in China, it purports to obligate Plaintiffs to performs acts in the United States, such as (i) transferring interests in real property in Hawaii by granting the Mortgages; and (ii) agreeing to become obligated under the Secured Guaranty and the Membership Pledge Agreement. It is these acts in the U.S. that result in the potential loss or depletion of the Plaintiffs' estates that is the focus of § 548 and § 651C-4. Thus, Plaintiffs are seeking the domestic application of § 548 and HRS § 651C-4 as it applies to the avoidance of the fraudulent obligations under the Framework Agreement, if valid.

### 5. TDH's Filing of Proofs of Claims Against Each Debtor's Bankruptcy Estate Effectively Moots Their Arguments that Application of the Fraudulent Transfer/Obligation Laws Are Being Applied Extraterritorially.

Even were the Court to assume, for argument's sake, that the application of fraudulent obligation laws to avoid any one of the obligations allegedly created under the Secured Guaranty, the Membership Pledge Agreement, and/or the Framework Agreement would be extraterritorial, as a result of TDH's filing of proofs of claims in each Debtor's bankruptcy estate, the presumption of

extraterritoriality does not apply.  Diaz-Barba v. Kismet Acquisition, LLC, 2010 U.S. Dist. LEXIS 50320, *21, 2010 WL 2079738 (S.D. Cal. May 20, 2010) ("when a party affirmatively invokes the jurisdiction of the bankruptcy court, the presumption against extraterritoriality does not apply to that party").  That is, now that TDH has filed proofs of claims against all Plaintiffs alleging a debt owed based upon the Framework Agreement, the Convertible Debt Agreement, and the Secured Guaranty, TDH has submitted itself to the Court's equitable jurisdiction under the claims administration process and this Court can decide the validity and amount of the obligation.

### C. Plaintiffs Provided Sufficient Detail Regarding the Fraudulent Transfers/Obligations.

TDH argues that the Complaint contains no specific factual allegations such as the "who, what, when, where, why and how" regarding the fraudulent transfers. TDH asserts that the Plaintiffs have thus failed to satisfy the standards in FRCP Rules 8 and 9.  In fact, the Plaintiffs have met their burden, as explained below.

FRCP Rule 9(b) does not apply to constructive fraud cases.  See Golden v. Clay Lacy Aviation, Inc. (In re Aletheia Research & Mgmt.), 2015 Bankr. LEXIS 4145, *13 n.5 (B.A.P. 9th Cir. Dec. 10, 2015) ("Neither party has contended that the heightened pleading standard of Civil Rule 9(b) applies to constructive fraud claims. We agree it does not apply.") (citations omitted).  FRCP Rule 9(b) may apply to actual fraudulent transfers when such claims sound in fraud, see Leslie v. Bartamian

(In re Mihranian), 2017 Bankr. LEXIS 1802, *18 (B.A.P. 9th Cir. June 26, 2017). Here, however, Plaintiffs have not pled any intentional or actual fraudulent transfers/obligations in the Complaint, only constructive fraudulent transfers/obligations under HRS § 651C-4(a)(2) and § 548(a)(1)(B). Thus, the heightened pleading standard does not apply. Instead, Fed. R. Civ. P. 8(a), made applicable by Fed. R. Bankr. P. 7008, requires only a short and plain statement of the claim showing that the pleader is entitled to relief.

In Mihranian, the Ninth Circuit Bankruptcy Appellate Panel discussed the items that must be pleaded for fraudulent transfer claims. In that case, the bankruptcy court issued an order and its direction that the plaintiff needed to re-plead his constructive fraudulent transfer claims with more specificity, "including, without limitation, the source of the alleged transfer(s), the identity of the alleged transferor(s), the date(s) of the alleged transfer(s), and the amount of the respective transfer(s). Id. at *21. The Court noted that "[t]ypically, identifying the source of the transfer(s) and the identity of the transferor(s) would provide facts from which a court plausibly could infer whether the debtor held a property interest in funds before their transfer". (Citations omitted.)

Here, the Complaint meets these criteria. The Complaint alleges that the interests in property were conveyed (via the Mortgages) in Paragraph 32.a-f, and the obligations were incurred in the Secured Guaranty (¶¶30-31), the Framework

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 12   Filed   05/27/21   Page 19 of 26

Agreement (¶31), and the Membership Interest Pledge Agreement (¶82). Second, the Complaint alleges the timing of the transfers by reciting the recordation date of the Mortgages (March 30, 2020; April 1, 2020; April 2, 2020; and April 23, 2020) in Paragraph 32.a-f and reciting the dates of the obligations under the Secured Guaranty (¶¶30-31), the Framework Agreement (¶31), and the Membership Interest Pledge Agreement (¶82). Third, the Complaint alleges the consideration paid for the transfers (**none**) as stated in Paragraphs 36, 42, 48, 54, 60, 66, 72, 78, and 85.

Nor do Plaintiffs engage in impermissible "group pleading," as alleged by TDH. As explained in Estate of Rolloffs Haw., LLC v. Trashmasters, LLC (In re Rolloffs Haw., LLC), "[t]he 'group pleading' rule means that **a plaintiff may not 'merely lump multiple defendants together'** but instead must 'inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" 2019 Bankr. LEXIS 1920, *14 (Bankr. D. June 25, 2019) (citing Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (citations and quotation marks omitted) (emphasis added)). Here, **there are multiple plaintiffs and only one defendant**. Accordingly, this rule does not apply.

### D. Plaintiffs Pleaded Sufficient Facts to Show Lack of Reasonably Equivalent Value.

TDH argues that the Complaint contains no specific facts supporting a permissible allegation of lack of reasonably equivalent value measured from the perspective of Plaintiffs' creditors. Memorandum in Support at page 25. TDH then

13

produces a word search list of "reasonably equivalent value" from the Complaint, arguing that there are only conclusory statements in the Complaint. Memorandum in Support at page 25-26. TDH's word search list is itself insufficient, because it fails to identify the factual allegations in the Complaint. Specifically, in Paragraphs 36, 42, 48, 54, 60, 66, 72, 78, and 85 of the Complaint, Plaintiffs allege that they received <u>nothing</u> in exchange for the Mortgages, the Framework Agreement, the Convertible Debt Agreement, the Secured Guaranty, or the Membership Interest Pledge Agreement.

In the Ninth Circuit, there is a two-step process required to determine whether a debtor received a reasonably equivalent value. <u>Diamond v. Mesisca Riley & Kreitenberg, LLP (In re Castle Trading, Inc.)</u>, 2017 Bankr. LEXIS 1462, *12 (B.A.P. 9th Cir. 2017).

First, it must be determined whether the debtor received value in exchange for the transfer. <u>Id.</u> "Value is defined for purposes of section 548 of the Code as 'property, or the satisfaction or securing of a present or antecedent debt of the debtor[.]" <u>Wyle v. C.H. Rider & Family (In re United Energy Corp.)</u>, 944 F.2d 589, 595 (9th Cir. 1991) (quoting § 548(d)(2)(A)). Under HRS § 651C-3(a), "[v]alue is given for a transfer or an obligation if in exchange for the transfer or obligation property is transferred or an antecedent debt is secured or satisfied, but value does

14

not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person."

The second step is to determine "whether the value of what was transferred was reasonably equivalent to what the debtor received." Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP), 408 B.R. 318, 341 (Bankr. N.D. Cal. 2009); see also Hasse v. Rainsdon (In re Pringle), 495 B.R. 447, 463 (B.A.P. 9th Cir. 2013) ("An examination into reasonably equivalent value is comprised of three inquiries: (1) whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received."). The Trustee (or the debtor in possession) must prove each element of the fraudulent transfer claim by a preponderance of the evidence. Flemmer v. Weiner (In re Vill. Concepts, Inc.), 2015 Bankr. LEXIS 4100, at *7 (B.A.P. 9th Cir. Dec. 4, 2015).

"In order to prevail on the constructive fraudulent transfer claims, the [plaintiff] must plead and prove that the Debtor did not receive 'reasonably equivalent value' in exchange for the transfers." Rolloffs, 2019 Bankr. LEXIS 1920, at *11. Allegations that the debtor received "little or no value" is sufficient to defeat a motion for dismissal. See Aletheia, 2015 Bankr. LEXIS 4145, ** 7, 25 ("Trustee contended that his complaint had met this standard [pleading facts alleging lack of reasonably equivalent value] by alleging that Aletheia paid Clay Lacy certain sums

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 12   Filed 05/27/21   Page 22 of 26

of money for which it received little or no value in return. . . . . Viewing the complaint in a light most favorable to Trustee, we conclude he stated sufficient facts to show Aletheia may not have received reasonably equivalent value from Clay Lacy for the Transfers.").

Here, Plaintiffs pleaded and alleged that they received **nothing**:  no direct benefits and no indirect benefits.  Complaint ¶¶ 36, 42, 48, 54, 60, 66, 72, 78, and 85.  Accordingly, the allegations in the Complaint are that Plaintiffs received no value at all.  These are not conclusory statements; these are statements of the "value" that Plaintiffs received in exchange for the transfers – none.  Because Plaintiffs received no value, no comparison of value received is necessary, because Plaintiffs alleged that no value was received.  See Aletheia, 2015 2015 Bankr. LEXIS 4145, **24-25 (pleading that in exchange for the transfers, the debtor received little to no value is sufficient to show the debtor may not have received reasonably equivalent value).

Based on the foregoing, Plaintiffs have clearly pleaded and alleged sufficient facts regarding "reasonably equivalent value" to overcome a Motion to Dismiss, because there are factual allegations in the Complaint that Plaintiffs received nothing in exchange for the transfers.

## E. Plaintiffs Have Pleaded Facts Sufficient Facts to Show Insolvency.

TDH knows very well that the Plaintiffs were insolvent or rendered insolvent by the Mortgages and other obligations that are the subject of the Complaint. Nevertheless, TDH argues that the Complaint fails to plausibly allege the Plaintiffs' insolvency.  Memorandum in Support at page 27.  However, the facts surrounding the Mortgages and other obligations support the allegations made by the Plaintiffs that each Plaintiff was insolvent or rendered insolvent at the time of the transfers or obligations incurred.  These facts are laid out in the documents referenced in the Complaint, which are incorporated by reference and may be referred to in this Memorandum in Opposition.  See In re Silicon Graphics, Inc. Securities Litigation, 970 F.Supp. 746, 758-59 (N.D. Cal. 1997) (denying plaintiffs' motion to strike a declaration submitted in support of a motion to dismiss because it referenced materials that were incorporated by reference in plaintiffs' complaint).  As described in the Complaint, each of the LLC Plaintiffs owned certain real properties, which each of the LLC Plaintiffs mortgaged in security to guaranty a loan in the amount of Four Hundred Million Chinese Yuen, or roughly $60M dollars.  See Security Agreement at page 1.  The obligations were joint and several.  Id.  Accordingly, each entity mortgaged its real property and guaranteed an additional $60M.  The resulting insolvency is obvious, particularly if the Court takes judicial notice that TDH's proofs of claim show that the cumulative value of Debtors' property securing TDH's

U.S. Bankruptcy Court - Hawaii  #21-90009  Dkt # 12  Filed  05/27/21  Page 24 of 26

claim is only about $27,000,000.  See Proofs of Claims filed by TDH, attached as Exhibits 1 through 8.  However, if the Court determines that Plaintiffs have not alleged sufficient facts to show insolvency (or any element discussed above), then Plaintiffs seek leave to amend the Complaint to allege facts regarding insolvency, because Plaintiffs have a sufficient basis to make these allegations.

## F. If the Court Determines that Any Facts Have Not Been Sufficiently Pled, Plaintiffs Seek Leave to Amend the Complaint.

If the Court determines that any particular element of any of Plaintiffs' claims has not be sufficiently pled, Plaintiffs seek leave to amend the Complaint.  As explained in Aletheia, "Under Rule 7015, incorporating Civil Rule 15(a)(2), '[t]he court should freely give leave [to amend] when justice so requires.' If a Civil Rule 12(b)(6) motion is granted, the 'court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted); see also United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981)("In exercising this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities.").

Accordingly, if necessary, Plaintiffs should be granted leave to amend the Complaint.

50200/1/100333

## III.  CONCLUSION

Based on the foregoing, Plaintiffs request that the Motion to Dismiss be denied, or, should the Court determine that the Motion to Dismiss be granted in any respect, that the Court grant Plaintiffs leave to amend the Complaint to address any deficiencies.

Dated:  Honolulu, Hawaii, May 27, 2021.

/s/ Christopher J. Muzzi
CHRISTOPHER J. MUZZI
Special Counsel for
Debtors/Plaintiffs PACIFIC LINKS U.S.
HOLDINGS, INC.; HAWAII MVCC LLC;
HAWAII MGCW LLC; MDRE LLC;
MDRE 2 LLC; MDRE 3 LLC;
MDRE 4 LLC; and MDRE 5 LLC

50200/1/100333