CASE LOMBARDI & PETTIT
A LAW CORPORATION

TED N. PETTIT                                4287-0
Email: tnp@caselombardi.com
MARIA AMPARO V. MCCORMICK      10623-0
Email: mav@caselombardi.com
Pacific Guardian Center, Mauka Tower
737 Bishop Street, Suite 2600
Honolulu, Hawaii 96813
Phone: (808) 547-5400 | Fax: (808) 523-1888

Attorneys for Defendant
Tianjin Dinghui Hongjun Equity Investment Partnership

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware Corporation,<br><br>Debtor and<br>Debtor in Possession. | Case No. 21-00094<br>(Chapter 11)<br>(Jointly Administered) |
| This Adversary Proceeding relates to:<br><br>ALL CASES | |
| PACIFIC LINKS US HOLDINGS, INC.; HAWAII MVCC LLC HAWAII; MGCW LLC; MDRE LLC; MDRE 2 LLC; MDRE 3 LLC; MDRE 4 LLC; and MDRE 5 LLC,<br><br>Plaintiffs | Adversary Proceeding No. 21-90009<br><br>**DEFENDANT TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT PARTNERSHIP'S REPLY TO DEBTORS' MEMORANDUM IN OPPOSITION TO DEFENDANT** |

vs.

TIANJIN DINGHUI HONGJUN
EQUITY INVESTMENT
PARTNERSHIP (LIMITED
PARTNERSHIP),

Defendant.

**TIANJIN DINGHUI HONGJUN
EQUITY INVESTMENT
PARTNERSHIP'S MOTION TO
DISMISS COMPLAINT [DKT 12]**

**HEARING**
Date: Thursday, June 10, 2021
Time: 10:00 a.m.
Judge: Hon. Robert J. Faris

**DEFENDANT TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT
PARTNERSHIP'S REPLY TO DEBTORS' MEMORANDUM IN
OPPOSITION TO DEFENDANT TIANJIN DINGHUI HONGJUN EQUITY
INVESTMENT PARTNERSHIP'S MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................1

II. THE PRESUMPTION AGAINST EXTRATERRITORIALITY APPLIES TO 11 U.S.C. § 548(a)(1) AND HRS § 651C-4(a)(2) ......................................2

III. THE COURT MUST CONSIDER THE FRAMEWORK AGREEMENT TO DETERMINE WHETHER THE RELEVANT CONDUCT OCCURRED IN UNITED STATES OR IN CHINA ..........................................................3

IV. THE RELEVANT CONDUCT OCCURRED IN CHINA ..............................6

V. INTERNATIONAL COMITY MUST BE CONSIDERED IN GRANTING THIS MOTION ................................................................................10

VI. TDH HAS NOT AFFIRMATIVELY INVOKED THE JURISDICTION OF THE BANKRUPTCY COURT ....................................................................11

VII. PLAINTIFFS HAVE NOT PLEADED SUFFICIENT FACTS TO SHOW LACK OF REASONABLY EQUIVALENT VALUE AND INSOLVENCY .......13

VIII. CONCLUSION ...............................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*Diaz-Barba v. Kismet Acquisition, LLC*, 2010 WL 2079738 (S.D. Cal. May 20, 2010) .................................................................................................12
*In re Aletheia Rsch. & Mgmt., Inc.*, 2015 WL 8483728 (B.A.P. 9th Cir. Dec. 10, 2015) ............................................................................................ 13, 14
*In re Ampal-Am. Israel Corp.,* 562 B.R. 601 (Bankr. S.D.N.Y. 2017) .............. 4, 10
*In re Bankr. Est. of Midland Euro Exch. Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006), ................................................................................................ 2, 11
*In re CIL Ltd.*, 582 B.R. 46 (Bankr. S.D.N.Y. 2018) ...............................................4, 9
*In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017) .................. 9, 10
*In re French*, 440 F.3d 145 (4th Cir. 2006) ...............................................................1
*In re Maxwell Commc'n Corp. plc*, 186 B.R. 807 (S.D.N.Y. 1995)............... 8, 9, 10
*In re Picard, ex rel. Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85 (2d Cir. 2019).4
*In re Sherwood Investments Overseas Ltd., Inc.*, 2015 WL 4486470 (Bankr. M.D. Fla. July 22, 2015) ......................................................................................4
*In re Zetta Jet USA, Inc.*, 2020 WL 7682136 (Bankr. C.D. Cal. July 29, 2020)...2, 3

**Federal Statutes**

11 U.S.C. § 547 ...........................................................................................................3
11 U.S.C. § 548 ............................................................................................. 1, 2, 3, 4
11 U.S.C. § 548(a)(1)..................................................................................................2
11 U.S.C. § 550 ..........................................................................................................4

**State Statutes**

HRS § 651C-4(a)(2)................................................................................................1, 2

**State Cases**

*Morrison v. National Australia Bank Ltd*, 561 U.S. 247 (2010) ..............................3
*RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090 (2016).........................................3
*WesternGeco v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) .......................3, 4

Defendant Tianjin Dinghui Hongjun Equity Investment Partnership ("**TDH**"), by and through its counsel, Case Lombardi & Pettit, A Law Corporation, respectfully submits its Reply to Debtors' Memorandum in Opposition to TDH's Motion to Dismiss Complaint ("**Opposition**"). [Dkt # 12]

## I. INTRODUCTION

In their Opposition, Plaintiffs neither deny that the majority of cases hold that 11 U.S.C. § 548 does not have extraterritorial application, nor contest that HRS § 651C-4(a)(2) does not apply extraterritorially. In response to the Motion, Plaintiffs ignore and do not contest TDH's argument that Chinese law governs the Agreements and contractual relationships among the Plaintiffs and TDH. Plaintiff are choosing not to address this argument because under Chinse law, consideration and reasonably equivalent value are not required for a contract to be valid and therefore, the Court should find that the Complaint fails to state a claim because each Count is unenforceable under the laws of China. In an effort to oppose the Motion, Plaintiffs make the following arguments:

(i) This Court should adopt the reasoning of *In re French*, 440 F.3d 145 (4th Cir. 2006) which has been rejected by the Ninth Circuit.

(ii) The relevant conduct occurred in the United States.

(iii) Plaintiffs pleaded sufficient facts to show lack of reasonably equivalent value and insolvency.

1

Plaintiffs' arguments lack substance and merit because (a) the majority of cases, including Ninth Circuit cases, hold that § 548 does not have extraterritorial application; (b) this Court must consider the Framework Agreement to determine whether the dispositive conduct occurred in the United States or in China because the issue is the source of conduct that caused the execution of the Secured Guaranty, Mortgages and Pledge Agreement, which allegedly depleted the property that would have become property of the bankruptcy estate; (c) the relevant conduct occurred in China, (d) this Court must consider international comity in evaluating the merits of this Motion; and (e) Plaintiffs have failed to plead sufficient facts to show lack of reasonably equivalent value and insolvency.

## II. THE PRESUMPTION AGAINST EXTRATERRITORIALITY APPLIES TO 11 U.S.C. § 548(a)(1) AND HRS § 651C-4(a)(2)

In the Opposition, relying on *In re Zetta Jet USA, Inc.*, 2020 WL 7682136 (Bankr. C.D. Cal. July 29, 2020), Plaintiffs argue that the presumption against territoriality, applicable to all federal law, does not apply to fraudulent transfer and fraudulent obligation cases. Plaintiffs urge this Court to adopt the reasoning of *In re French*, where the Fourth Circuit applied § 548 extraterritorially.

However, the *Zetta* court, citing to *In re Bankr. Est. of Midland Euro Exch. Inc.*, 347 B.R. 708 (Bankr. C.D. Cal. 2006), concluded that:

> [T]he Court agrees with Judge Mund that *French*'s reasoning is "convoluted" and hard to follow. *Midland Euro*, 347 B.R. at 719. If Congress "clearly," "affirmatively," and "unmistakably" intended §§

2

> 547 and 548 to apply extraterritorially, it would not have expressed its intent in such an unclear way as the court in *French* thought, which has led to such disagreement among the courts.

*In re Zetta Jet USA, Inc.*, 2020 WL 7682136, at *11 (Bankr. C.D. Cal. July 29, 2020). The language used by the *Zetta* court clearly shows that courts in the Ninth Circuit reject *French*'s position consistent with U.S. Supreme Court doctrine on preclusion of extraterritoriality established in *Morrison v. National Australia Bank Ltd*, 561 U.S. 247 (2010), *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S. Ct. 2090 (2016) and *WesternGeco v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018).

Importantly, the majority of cases, which follow *Midland Euro*, hold that 11 U.S.C. § 547 and § 548 do not have extraterritorial application. In sum, cases in the Ninth Circuit do not support Plaintiffs' argument that the presumption against extraterritoriality does not apply to Plaintiffs' causes of action against TDH.

### III. THE COURT MUST CONSIDER THE FRAMEWORK AGREEMENT TO DETERMINE WHETHER THE RELEVANT CONDUCT OCCURRED IN UNITED STATES OR IN CHINA

As explained in the Motion, under the second step of the Supreme Court's framework for analyzing extraterritorial issues, courts must analyze a statute's focus. *RJR Nabisco, Inc.*, 136 S. Ct. at 2101. The focus of a statute is the object of its solicitude, which can include the conduct it seeks to regulate, as well as the parties and interests it seeks to protect or vindicate. *WesternGeco LLC*, 138 S. Ct. at 2137 (citing *Morrison*, 561 U.S. at 267) (citations omitted). The Supreme Court advised

3

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 13   Filed  06/03/21   Page 7 of 19

that the analysis of a statute's focus should not occur *in a vacuum* but should assess the statute in concert with other provisions with which it works *in tandem*, and with a view to determining how the statute has actually been applied. *Id*.

To determine the conduct that is relevant in this case, this Court must consider the "focus" of the avoidance and recovery provisions (11 U.S.C. § 548 and 11 U.S.C. § 550), which is "the initial transfer that depletes the property that would have become property of the estate." *In re CIL Ltd.*, 582 B.R. 46, 93 (Bankr. S.D.N.Y. 2018); *see also In re Ampal-Am. Israel Corp.*, 562 B.R. 601, 613 (Bankr. S.D.N.Y. 2017) (same); *In re Picard, ex rel. Bernard L. Madoff Inv. Sec. LLC*, 917 F.3d 85, 91, 93, 98 (2d Cir. 2019), ("[I]n actions involving both [§ 548 and § 550], § 550(a) regulates the debtor's initial transfer."); *In re Sherwood Investments Overseas Ltd., Inc.*, 2015 WL 4486470, at *19 (Bankr. M.D. Fla. July 22, 2015) ("Courts applying the extraterritoriality presumption to fraudulent transfers typically hold that the proper focus is the *transfers* sought to be avoided, not the parties' relationship or locus." (emphasis in original)).

In their Opposition, Plaintiffs argue that the Framework Agreement is not a "transfer," but rather, an obligation, so that the Court should not focus on the Framework Agreement as "initial transfer." Opposition at 5. This argument is meritless.

4

The focus on the avoidance and recovery sections is on the ***initial transfer that depletes the bankruptcy estate (and not on a subsequent transfer)***. In this case, the initial transfer and/or obligation that depleted the property that would have become property of the estate is the Framework Agreement. The Framework Agreement is the *initial transfer* to determine the conduct that is relevant to the analysis for the following reasons:

> i. It is the source that caused the execution of the Secured Guaranty, Mortgages and Pledge Agreement, which allegedly depleted the property that would have become property of the bankruptcy estate. *See* Complaint ¶ 31 ("The Secured Guaranty was purportedly entered into pursuant to (i) a Convertible Debt Agreement . . . and (ii) a Framework Agreement between Debtors and multiple other persons and entities, including Plaintiffs."); ¶ 32 ("In connection with the Secured Guaranty, Hawaii MVCC executed that certain Mortgage . . ."); ¶ 82 ("In connection with the Convertible Debt, PLUSH purportedly executed a Membership Interest Pledge Agreement with Defendant . . ."). *See also* Opposition at 14 ("The obligation secured by each Mortgage arose out of the Secured Guaranty, which was purportedly agreed in the Framework Agreement.").

ii. Fundamental secured transaction law establishes that without the grant of a security interest, there is no viable, enforceable security agreement or mortgage. The creation of the security interest began with the Framework Agreement. In other words, "but for" the Framework Agreement there would be no Secured Guaranty, Pledge Agreement and Mortgages.

iii. The Framework Agreement together with the Secured Guaranty, Pledge Agreement and Mortgages are sought to be avoided by the Plaintiffs.

Notably, Plaintiffs attempt to avoid any analysis of the Framework Agreement in their Opposition for several reasons. First, the Framework Agreement is drafted in Chinese, executed by 22 parties in China, all of which are foreign entities and citizens except for Plaintiffs. Second, the Framework Agreement is governed by Chinese law. Third, China has its own laws on fraudulent transfers that may render a much different result if adjudicated under Chinese law. Fourth, Plaintiffs do not want this Court to scrutinize the impact of application of Chinese law to Plaintiffs' fraudulent transfer claims because the claims will then lack merit.

**IV. THE RELEVANT CONDUCT OCCURRED IN CHINA**

In their Opposition, Plaintiffs argue that the relevant conduct occurred in the United States because (i) the Framework Agreement entered into by a number of

6

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 13   Filed  06/03/21   Page 10 of 19

foreign parties in China, purports to obligate Plaintiffs to perform acts in the United States [Opposition at 17]; (ii) the Secured Guaranty pledges collateral that is located in the United States [Opposition at 14-15]; (iii) the Pledge Agreement purports to pledge membership interests in the LLC Plaintiffs, which are all Hawaii limited liability companies, to TDH [Opposition at 16]; and (iv) the Mortgages were recorded in the State of Hawaii [Opposition at 12-14]. Plaintiffs' arguments are not factually supported. The **only** conduct that occurred in the United States was the recording of the Mortgages.

The Court, considering the Framework Agreement, together with the Convertible Debt Agreement and the actual Loan, and all events involving the alleged fraudulent transfers, should find that the relevant conduct occurred in China for the following reasons:

  i. The creation of the security interests began with the Framework Agreement. *See* Framework Agreement, Sections 8.1 (Security), 8.2 (Pledge), 8.3 (Mortgage) and 8.4 (Realization of security interests).

  ii. The Framework Agreement was negotiated and executed in China.

  iii. The Framework Agreement is written in Chinese.

  iv. The Framework Agreement is governed by Chinese law. *See* Framework Agreement, Section 16.7.

  v. Disputes under the Framework Agreement are to be adjudicated by arbitration by the Shenzhen Court of International Arbitration. *See* Framework Agreement, Section 16.8.

vi. All parties to the Framework Agreement other than Plaintiffs are foreign entities or foreign natural persons. *See* Framework Agreement, Section 1 (Definitions).[1]

vii. The lender, TDH, and the borrower, TKB, are Chinese entities. *See* Framework Agreement, Section 1.[2]

viii. The currency denominations are in RMB Yuan, not US Dollars, so that the payments were required in RBM Yuan. *See* Framework Agreement, Sections 1.63 and 2.1.

ix. The Framework Agreement is the master agreement that governs all other agreements, including the Secured Guaranty, the Pledge Agreement and the Mortgages. *See* Framework Agreement, Section 16.9.

x. The funds loaned by TDH to TKB were transferred to foreign accounts. Exhibit 1 of the Framework Agreement. The underlying transaction, the Loan, was accomplished outside of the United States.

xi. All Supervised Accounts and Accounts Subject to Enquiry (Exhibit 2 of Framework Agreement) are foreign accounts (China or Hong Kong).

xii. Avoidance of the Framework Agreement, Secured Guaranty and Mortgages will impact numerous Chinese entities and individuals, many of whom have guaranties or pledge agreements with TDH. *See* Framework Agreement, Section 1.

Courts have found that the relevant conduct was extraterritorial in similar circumstances. For instance, in *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807 (S.D.N.Y. 1995), the debtor sold significant portions of its U.S. assets and used some

---

[1] All parties to the Secured Guaranty other than Plaintiffs are foreign entities, including Pacific Links International Company, which is a Cayman company.

[2] The parties to the Convertible Debt Agreement, TDH, as Lender, and TKB, as Borrower, are Chinese entities.

of the proceeds to repay overdraft balances to foreign banks. The court found that transfers were extraterritorial because, among others reasons, (1) parties were all foreign entities whose relationship was "centered in England;" (2) the antecedent debts underlying the transfers arose from debtor's overdrafts on accounts maintained with banks in England and governed by English law; and (3) debtor repaid its debts by transferring funds to accounts in the U.K. *Id*. 817.

In *In re FAH Liquidating Corp.*, 572 B.R. 117 (Bankr. D. Del. 2017), Bayerische Moteren Werke Aktiengesellschaft (BMW), a German corporation, executed agreements with debtor, a U.S. entity, for the installation of BMW engines and parts into debtor's vehicles. Debtor transferred $32 million to BMW. The court held that the transfers were extraterritorial, in Germany, because (1) the agreements specified milestones to be achieved at BMW's production facilities in Germany; (2) the agreements had provisions mandating the forum for disputes as Munich; (3) German law applied; and (4) the payments were required in Euros. *Id*. at 124-25. *See also In re CIL Ltd*, 582 B.R.at 93-94 (finding that the transfer of equity interest was extraterritorial because among other reasons, (1) it was among foreign entities and allegedly harmed foreign creditors, and (2) it was accomplished outside the United States).

The recording of a mortgage in the State of Hawaii alone is not enough to overcome the presumption against extraterritoriality of fraudulent transfer law. If the

9

conduct relevant to the statute's "focus" occurred abroad, then the case involves an impermissible extraterritorial application regardless of any other conduct that occurred in U.S. territory. *RJR*, 136 S.Ct. at 2101. For example, in *In re Maxwell Commc'n Corp. plc*, 186 B.R. 807, 817 (S.D.N.Y. 1995), the court stated that even assuming the transfers were initiated in the U.S. after U.S. asset sales, this conduct was more appropriately described as a "preparatory step" to the transfers. Similarly, in *In re FAH Liquidating Corp.*, 572 B.R. 117, 124 (Bankr. D. Del. 2017), although the court recognized that the transfers originated in the U.S. from a Delaware corporation, it concluded that these facts were insufficient to overcome the "primarily foreign nature" of the agreements. *See also In re Ampal-Am. Israel Corp.*, 562 B.R. at 613-14 (Even where claims "touch and concern" the U.S., they must do so with "sufficient force" to displace the presumption against extraterritoriality").

## V. INTERNATIONAL COMITY MUST BE CONSIDERED IN GRANTING THIS MOTION

This Court should not grant extraterritorial effect to the Complaint due to concerns for international comity. Under the doctrine of international comity, courts sometimes defer to the laws or interests of a foreign country and decline to exercise the jurisdiction they otherwise have. *In re Bankr. Est. of Midland Euro Exch. Inc.*, 347 B.R. at 719. It is a recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to

10

international duty and convenience and to the rights of its own citizens or of other persons who are under the protection of its laws. *Id* at 720.

Avoidance actions under the Bankruptcy Code and the equivalent Chinese laws are in conflict. The conflict is not a simple conflict between two Western nations. This is a conflict between the U.S. and the People's Republic of China, both commercial giants in the world's economy. There is no reason to believe that the parties to the Framework Agreement intended that U.S. bankruptcy law would apply to their contractual arrangements. Just the opposite: the parties agreed in writing that Chinese law would apply. And, in the event of any discrepancy between the Framework Agreement and any other related document, the parties agreed that Framework Agreement would apply.

There is a dispute concerning the validity of the Mortgages so the Framework Agreement and Chinese law apply to the dispute. This places this Court in the untenable position of ruling on the Framework Agreement and thereby subjecting all parties, the Chinese arbitration tribunals to the imposition of U.S. law.[3]

## VI. TDH HAS NOT AFFIRMATELY INVOKED THE JURISDICTION OF THE BANKRUPTCY COURT

Plaintiffs argue that as a result of TDH's filing of proofs of claim in the bankruptcy proceedings, the presumption of extraterritoriality does not apply.

---

[3] At the time of this Reply, there is an ongoing arbitration in China with respect to enforceability of the terms of the Framework Agreement. *See* Declaration of Li Zhou [Dkt # 71-1] ¶¶ 20-34.

Plaintiffs cite to *Diaz-Barba v. Kismet Acquisition, LLC*, 2010 WL 2079738, at * 7 (S.D. Cal. May 20, 2010) to support their argument, where the court stated that "when a party affirmatively invokes the jurisdiction of the bankruptcy court, the presumption against extraterritoriality does not apply to that party." The *Diaz-Barba* court, however, held that appellants did not voluntarily submit to the jurisdiction of the court as they were made defendants in an adversary proceeding and moved to dismiss the complaint and only after their motion to dismiss was denied did they voluntarily participate in the proceedings to protect their interest. *Id*.

Similar to *Diaz-Barba*, TDH has not affirmatively invoked the jurisdiction of this Court as TDH has been made defendant in this adversary proceeding and has moved to dismiss the Complaint.

In addition, the proofs of claim filed by TDH show that TDH has not submitted to the jurisdiction of this Court with respect to the validity, amount, or priority of the alleged fraudulent transfers because TDH indicated in sections 7, 8 and 9 of all proofs of claims the following language: "*Subject to the Arbitrator's or Court's determination of whether Chinese law or U.S. law applies*."[4]

---

[4] TDH objects and this Court should not consider TDH's proofs of claim (Exhibits 1 -8) as well as the other two exhibits (Exhibits 9 and 10) attached to the Opposition. As a general rule, a court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Exhibits 1-10 attached to the Opposition are not referenced in the Complaint and therefore, the "incorporation-by-reference" doctrine does not apply.

## VII. PLAINTIFFS HAVE NOT PLEADED SUFFICIENT FACTS TO SHOW LACK OF REASONABLY EQUIVALENT VALUE AND INSOLVENCY

In their Opposition, Plaintiffs allege (1) they have clearly pleaded and alleged sufficient facts regarding "reasonably equivalent value" because there are factual allegations in the Complaint that Plaintiffs received nothing in exchange for the transfers [Opposition at 20-23] and (2) they have pleaded sufficient facts to show insolvency because each entity mortgaged its real property to guaranty a loan in the amount of $60 Million [Opposition at 24-25].

Plaintiffs cite to *In re Aletheia Rsch. & Mgmt., Inc.*, 2015 WL 8483728 (B.A.P. 9th Cir. Dec. 10, 2015) to support their argument that pleading "Plaintiffs did not receive any direct or indirect benefit" from the Framework Agreement, the Convertible Debt agreement, the Secured Guaranty, the Mortgages or the Membership Interest Pledge Agreements [Complaint ¶¶ 36, 42, 48, 54, 60, 66, 72, 78, 85] is sufficient to show lack of reasonably equivalent value.

*Aletheia* is distinguishable and does not support Plaintiffs' argument. In *Aletheia*, the trustee alleged that in exchange for the transfers ($5 million to an aviation company for flight-related services), *debtor received little or no value for the flights where (1) employees took the flight for personal purposes or (2) no debtor employees were even on board*. Trustee provided *a comprehensive list of the flights in question, including the dates, names of each passenger on the flight, the flight's*

13

*destination and the price paid to the aviation company*. Based on the above facts, the *Aletheia* court concluded trustee stated sufficient facts to show debtor may not have received reasonably equivalent value from the aviation company for the transfers. *Id*. at * 8. In this case, Plaintiffs rely on conclusory statements, including "Plaintiffs did not receive any direct or indirect benefit" from the Framework Agreement, the Convertible Debt Agreement, the Secured Guaranty, the Mortgages or the Membership Interest Pledge Agreements. In contrast with *Aletheia,* Plaintiffs, in their Complaint, provide no facts to support that they received little or no value for the alleged fraudulent transfers. Simply stating, "Plaintiffs did not receive any direct or indirect benefit" or "Plaintiffs received nothing" is not enough to withstand a motion to dismiss.

Plaintiffs state that TDH knows very well that the Plaintiffs were insolvent or rendered insolvent by the Mortgages and other obligations that are the subject of the Complaint, and that the insolvency is "obvious." What TDH knows or does not know or whether the insolvency is obvious or not obvious to Plaintiffs' eyes is irrelevant on a motion to dismiss. Instead, what is relevant on a motion to dismiss is whether the Complaint contains sufficient facts to state a claim for relief. As fully discussed on the Motion, the Complaint fails to plausibly allege Plaintiffs' Actual Insolvency, Inadequate Capitalization or Intent to Incur Debt as of December 11, 2019, when the alleged fraudulent transfers occurred.

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 13   Filed  06/03/21   Page 18 of 19

## VIII. CONCLUSION

Based on the foregoing, TDH requests that the Motion be granted and this Court dismiss all Counts of the Complaint against TDH with prejudice.

As noted on the Motion, TDH reserves the right to assert any and all defenses, including but not limited to the following: (i) lack of jurisdiction; (ii) the abstention doctrine; (iii) doctrine of comity of international courts; (iv) arbitration; (v) right to a jury trial; and (vi) other remedies under the governing law of China.

DATED:     Honolulu, Hawaii, _____ June 3, 2021 _____

/s/ Ted N. Pettit
TED N. PETTIT
MARIA AMPARO V. MCCORMICK
Attorneys for Defendant
TIANJIN DINGHUI HONGJUN EQUITY
INVESTMENT PARTNERSHIP
