**Date Signed:**
**April 28, 2022**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation,<br><br>Debtor. | Case No. 21-00094<br>Chapter 11<br>(Jointly Administered – Lead Case) |
| This Adversary Proceeding relates to:<br><br>ALL CASES | |
| PACIFIC LINKS U.S. HOLDINGS, INC., et al.<br><br>Plaintiffs,<br>vs.<br><br>TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT PARTNERSHIP (LIMITED PARTNERSHIP),<br><br>Defendant. | Adv. Pro. No. 21-90009<br><br>Dkt. 74, 108, 116 |

# TENTATIVE RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT (REASONABLY EQUIVALENT VALUE)

Subject to oral argument and further reflection, the court is inclined to grant Plaintiff's Motion for Partial Summary Judgment on the Element in Counts I-IX that Plaintiffs Did Not Receive Reasonably Equivalent Value in Exchange for the Obligations Incurred by Plaintiffs and Transfers Made by Plaintiffs to Defendant (ECF 74).

## I. UNDISPUTED FACTS

The following facts are apparently not subject to any genuine dispute:

1. In 2017, defendant Tianjin Dinghui Hongjun Equity Investment Partnership (Limited Partnership) ("TDH") made a loan to Tianjin Kapolei Business Information Consultancy Co., Ltd. ("TKB"), a limited partnership organized under the laws of the People's Republic of China. TKB is an affiliate, but not a subsidiary, of the plaintiffs in this adversary proceeding. The plaintiffs were not made liable for repayment of the loan. None of the loan proceeds were disbursed directly to any of the plaintiffs.

2. In 2018, TDH lent additional funds to TKB and extended the maturity of the 2017 loan. The plaintiffs were not made liable for repayment

U.S. Bankruptcy Court - Hawaii    #21-90009    Dkt # 124    Filed  04/28/22    Page 2 of 11

of the loan. None of the loan proceeds were disbursed directly to any of the plaintiffs.

3. In December 2019, TKB, the plaintiffs, and other affiliates entered into a Framework Agreement and other agreements with TDH. The Framework Agreement provided that TDH would make a new loan to TKB in an amount equal to TKB's preexisting indebtedness TDH and that TKB would use all of the loan proceeds to retire that indebtedness. The parties structured the transaction in this way because they believed that Chinese law prohibited an extension of the preexisting loans.

4. The plaintiffs became liable to TDH for the first time as part of the 2019 transaction. They guaranteed the debt and granted mortgages and security interests in their assets to TDH. They did not receive any proceeds of the 2019 "loan" (which was in substance not a new loan but rather an extension of the preexisting loans to TKB).

## II. LEGAL STANDARD

Plaintiffs seek to avoid the obligations they incurred and the transfers they made in 2019 in the form of mortgages and security interests. They rely

3

on Haw. Rev. Stat. § 651C-4(a)(2) and Bankruptcy Code § 548(a)(1)(B).

Under Ninth Circuit law, once the requisite transfer is identified, the party moving to avoid the transaction under §548(a)(1)(B) must show: (1) the transfer involved property of the debtor; (2) the transfer was made within two years of the petition; (3) the debtor did not receive reasonably equivalent value for the property transferred; and (4) the debtor was insolvent, made insolvent by the transaction, operating or about to operate without sufficient capital or unable to pay debts as they become due. *See Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 462-63 (B.A.P. 9th Cir. 2013) (citing *Spear v. Global Forest Prods. (In re Heddings Lumber & Bldg. Supply, Inc.*), 228 B.R. 727, 729 (9th Cir. B.A.P. 1998)). The plaintiffs have moved for partial summary judgment on the third element.

While the language of the Hawaii statute is slightly different, the analysis of the element of reasonably equivalent value is functionally the same.

"An examination into reasonably equivalent value is comprised of three inquiries: (1) whether value was given; (2) if value was given, whether

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 124   Filed  04/28/22   Page 4 of 11

it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received." *Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 463 (B.A.P. 9th Cir. 2013).

Bankruptcy Code § 548(d)(2)(A) provides that "[V]alue means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." Haw. Rev. Stat. 651C-3 is the same in substance.

## III.  DISCUSSION

The first step of the analysis of whether reasonably equivalent value was provided is a determination of whether *any* value was provided. Value can be provided either directly or indirectly. *Frontier Bank v. Brown (In re N. Merch., Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004). Additionally, it is not required that the value be provided by the defendant, but any party to the transaction may provide the required value. *Id*.

### a. Direct Benefit to Plaintiffs

It is undisputed that TDH did not provide any "property" directly to

5

the plaintiffs. None of the loan proceeds – from the 2017, 2018, and 2019 transactions – were disbursed directly to any of the plaintiffs.

Nor did the plaintiffs satisfy an antecedent debt when they signed the 2019 documents. They owed no antecedent debt to TDH. TDH might argue that the 2019 documents created a "present" debt when they were signed, and that present debt would constitute value to support the security and mortgage documents. But these obligations are a target of the plaintiffs' avoidance action. An avoided obligation cannot protect a transfer made to secure that debt.

### b. Indirect Benefit to Plaintiffs

Although there was no direct benefit, the transaction may be protected from avoidance if there was an indirect benefit to the plaintiffs. However, once a prima facie case is made by the party moving for avoidance, the burden shifts to the defendant to demonstrate the existence of an indirect benefit. *See Henshaw v. Field (In re Henshaw)*, 485 B.R. 412, 422 (D. Haw. Jan. 22, 2013) (quoting *In re TriGem Am. Corp.*, 431 B.R. 855, 868 (Bankr. C.D. Cal 2010) for the proposition that once a bankruptcy trustee "makes a prima facie

6

showing that no sufficient direct benefit was received in the transaction, it is the defendants' burden to prove sufficient indirect benefit that is tangible and concrete").

TDH offers evidence that the plaintiffs indirectly received the lion's share of the 2017 and 2018 loan proceeds. TCH contends that this indirect receipt of loan proceeds constitutes "reasonably equivalent value" to support the 2019 transactions. As the plaintiffs point out, the evidence supporting this contention is equivocal. Assuming (for purposes of summary judgment) that the factual premise of this argument is true, the inquiry then moves to the second step: whether the value given was "in exchange for" the transfer. Here, the defendant has provided no evidence to suggest that TDH lent money in 2017 and 2018 "in exchange for" obligations and transfers that were not undertaken until 2019.

TDH also argues that the substantial sums it lent to the plaintiff's affiliates provided an indirect benefit to the plaintiffs. But this is not sufficient. In some circumstances, a loan to a subsidiary might benefit the parent company by improving the subsidiary's prospects and increasing the

7

value of the parent's ownership interest. But TKB and the other borrowers were not subsidiaries of the plaintiffs. In any event, TDH has not shown that the plaintiffs entered into the 2019 transactions in exchange for any indirect benefits they received in 2017 and 2018, or that the value of those indirect benefits is reasonably equivalent to the cost of the 2019 transaction to the plaintiffs.

Additionally, TDH argues that the plaintiffs and TKB are part of a global network of interdependent companies known as the Pacific Links Group. Under the "single enterprise theory," the defendant then argues that benefits provided to one part of this "single enterprise" should be considered a benefit to the entire enterprise. This argument fails for two reasons. First, the evidence does not establish that the court should disregard the legal separations between the entities in the "network"; the flow of funds between the entities is not enough. Second, the case cited by the defendant, *In re Sabine Oil & Gas Corp.*, 547 B.R. 503 (Bankr. S.D.N.Y. 2016), rejected the argument that the existence of a single enterprise would "obviate the need to conduct a reasonably equivalent value analysis with respect to the indirect

8

benefits received by the [subsidiary debtors]." When the focus is properly on the plaintiffs, it is evident there was no indirect benefit reasonably equivalent to the obligations incurred and transfers made.

TDH argues that its agreement to forbear from collecting its loans in 2019 benefitted the plaintiffs. If TDH had asserted its rights against TKB and the other borrowers, says TDH, the plaintiffs could not have drawn funds from TKB and the affiliates to fund their operations. TDH offers no evidence that the plaintiffs in fact received any money from TKB or any of its affiliates after December 2019. TDH argues that the affiliates' failure to cooperate in discovery is the source of this problem, but TDH has not made a sufficient showing under rule 56(d) to warrant denial or continuance of the plaintiffs' motion.

Moreover, even assuming that there was an indirect benefit to the plaintiffs. TDH still bears the burden of establishing the value of that indirect benefit was "reasonably equivalent" to the obligations incurred and transfers made by the plaintiffs. TDH has not provided any evidence valuing the indirect benefits alleged. The plaintiffs have provided evidence that the

9

guarantees obligated the plaintiffs jointly and severally on approximately $57 million in debt. In addition to this, the plaintiffs transferred multiple mortgages and security interests to TDH. The defendants have not alleged that the value of the indirect benefits comes anywhere close to this amount.

Additionally, it is useful to view this case from a larger perspective. In a fraudulent transfer case, "the analysis is directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost. This is so because the policy behind section 548 is to preserve the assets of the estate." *Wyle v. C.H. Rider & Family (In re United Energy Corp.)*, 944 F.2d 589, 597 (9th Cir. 1991) (cleaned up). Simply put, the 2019 transactions left the plaintiff's creditors worse off.The transaction greatly diminished the plaintiff's financial condition, by increasing their debt and decreasing their unencumbered assets, while provided no offsetting benefits or similar value.

### IV. CONCLUSION

For the above reasons, the court is inclined to grant the Plaintiffs' motion.

U.S. Bankruptcy Court - Hawaii    #21-90009    Dkt # 124    Filed 04/28/22    Page 10 of 11

**END OF TENTATIVE RULING**