

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re:<br><br>PACIFIC LINKS U.S. HOLDINGS, INC., a Delaware corporation,<br><br>          Debtor. | Case No. 21-00094<br>Chapter 11<br>(Jointly Administered – Lead Case) |
| This Adversary Proceeding relates to:<br><br>ALL CASES | |
| PACIFIC LINKS U.S. HOLDINGS, INC., et al.<br><br>          Plaintiffs,<br>   vs.<br><br>TIANJIN DINGHUI HONGJUN EQUITY INVESTMENT PARTNERSHIP (LIMITED PARTNERSHIP),<br><br>          Defendant. | Adv. Pro. No. 21-90009<br><br>Dkt. 74, 108, 116 |

# MEMORANDUM OF DECISION ON MOTION FOR PARTIAL SUMMARY JUDGMENT (REASONABLY EQUIVALENT VALUE)

The plaintiffs in this adversary proceeding seek to avoid, as constructively fraudulent, certain guaranties and mortgages that they granted to defendant Tianjin Dinghui Hongjun Equity Investment Partnership (Limited Partnership) ("TDH"). They seek partial summary judgment (ECF 74) determining that they did not receive reasonably equivalent value in exchange for those obligations and transfers. For the reasons that follow, I will GRANT the motion.

## I. UNDISPUTED FACTS

The following facts are not subject to any genuine dispute:

1. In 2017, defendant Tianjin Dinghui Hongjun Equity Investment Partnership (Limited Partnership) ("TDH") made a loan to Tianjin Kapolei Business Information Consultancy Co., Ltd. ("TKB"), a limited partnership organized under the laws of the People's Republic of China, under an Entrusted Loan Agreement with China CITIC Bank as agent and TDH as trustor. TKB is an affiliate, but not a subsidiary, of the plaintiffs in this adversary proceeding. The plaintiffs were not made liable for repayment of

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 133   Filed 05/04/22   Page 2 of 12

the loan. None of the loan proceeds were disbursed directly to any of the plaintiffs.

2. In 2018, TDH lent additional funds to TKB in a similarly structured transaction and extended the maturity of the 2017 loan. The plaintiffs were not made liable for repayment of the loan. None of the loan proceeds were disbursed directly to any of the plaintiffs.

3. In December 2019, TKB, the plaintiffs, and other affiliates entered into a Framework Agreement and other agreements with TDH. The Framework Agreement provided that TDH would make a new loan to TKB in an amount equal to TKB's preexisting indebtedness to TDH (about $57 million) and that TKB would repay that indebtedness. The parties structured the transaction as a circular flow of cash because they believed that Chinese law prohibited an extension of the 2017 entrusted loan. TDH did not advance any net new funds to TKB, and TKB owed the same amount of money to TDH before and after the 2019 transaction.

4. The plaintiffs became liable to TDH for the first time as part of the 2019 transaction. They guaranteed the debt and granted mortgages and

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 133   Filed 05/04/22   Page 3 of 12

security interests in their assets to TDH. They did not receive any proceeds of the 2019 loan.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 requires the court to grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). "Entry of summary judgment is mandated, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish that existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett* 477 U.S. 317, 322 (1986). Evidence and inferences must be construed in the light most favorable to the nonmoving party. *Porter*, 419 F.3d at 891.

## III. LEGAL STANDARD

Plaintiffs seek to avoid the obligations they incurred and the transfers they made in 2019 in the form of mortgages and security interests. They rely on Haw. Rev. Stat. § 651C-4(a)(2) and Bankruptcy Code § 548(a)(1)(B).

4

The party seeking to avoid a transfer or obligation under § 548(a)(1)(B) must show (among other things) that the debtor did not receive reasonably equivalent value for the property transferred or obligation undertaken. *See Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447, 462-63 (B.A.P. 9th Cir. 2013) (citing *Spear v. Global Forest Prods. (In re Heddings Lumber & Bldg. Supply, Inc.)*, 228 B.R. 727, 729 (9th Cir. B.A.P. 1998)). While the language of the Hawaii statute is slightly different, the element of reasonably equivalent value is functionally the same.

"An examination into reasonably equivalent value is comprised of three inquiries: (1) whether value was given; (2) if value was given, whether it was given in exchange for the transfer; and (3) whether what was transferred was reasonably equivalent to what was received." *In re Pringle*, 495 B.R. at 463 (B.A.P. 9th Cir. 2013) (citing *Greenspan v. Orrick, Herrington & Sutcliffe LLP (In re Brobeck, Phleger & Harrison LLP)*, 408 B.R. 318, 341-43 (Bankr. N.D. Cal. 2009).

Bankruptcy Code § 548(d)(2)(A) provides that "[V]alue means property, or satisfaction or securing of a present or antecedent debt of the

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 133   Filed 05/04/22   Page 5 of 12

debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." Haw. Rev. Stat. 651C-3 is the same in substance.

It is undisputed that TDH did not provide any "property" directly to the plaintiffs. None of the loan proceeds were disbursed directly to any of the plaintiffs. And the plaintiffs did not owe anything to TDH until they signed the 2019 guaranties. They owed no antecedent debt to TDH.[1]

But "value" can be provided either directly or indirectly. *See, e.g., Frontier Bank v. Brown (In re N. Merch., Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004). If the value is indirect, however, the burden of proof shifts. If the plaintiff makes a prima facie case for avoidance, the burden shifts to the defendant to demonstrate the existence of an indirect benefit. *See Henshaw v. Field (In re Henshaw)*, 485 B.R. 412, 422 (D. Haw. 2013) (quoting *In re TriGem Am. Corp.*, 431 B.R. 855, 868 (Bankr. C.D. Cal 2010) for the proposition that once a bankruptcy trustee "makes a prima facie showing that no sufficient

---

[1] One potential argument is that the 2019 documents created a "present" debt when they were signed, and that present debt would constitute value to support the security and mortgage documents. But these obligations are a target of the plaintiffs' avoidance action. An avoided obligation cannot protect a transfer made to secure that debt.

6

direct benefit was received in the transaction, it is the defendants' burden to prove sufficient indirect benefit that is tangible and concrete").

TDH argues that the plaintiffs received reasonably equivalent value from the loans and the 2019 transaction in several ways.

<u>First</u>, TDH argues that the plaintiffs and TKB are part of a global network of interdependent companies known as the Pacific Links Group that should be treated as a "single enterprise." TDH alleges that due to the relationship of these entities, the plaintiffs benefited from the 2017 and 2018 transactions with TKB. Primarily, TDH offers evidence that, after TDH lent money to TKB in 2017 and 2018, and before the 2019 transaction, the plaintiffs received substantial cash transfers from other TKB affiliates. TDH argues that the plaintiffs indirectly received the lion's share of the 2017 and 2018 loan proceeds, or at least that they received cash infusions that they would not have received if TDH had not made the loans to TKB. The evidence supporting this contention is equivocal, but for purposes of summary judgment I assume that it is true.

TDH also argues that the loans indirectly benefitted the plaintiffs

7

because they enabled TKB and other affiliates to provide services, such as sales and business development, that helped develop the plaintiffs' golf courses in Makaha. TDH has not offered evidence, however, that the court should disregard the legal separations between the entities in the "network"; the flow of funds between the entities is not enough. Further, even if there is a single enterprise, the court must still "conduct a reasonably equivalent value analysis with respect to the indirect benefits received by the [plaintiffs]." *In re Sabine Oil & Gas Corp.*, 547 B.R. 503 (Bankr. S.D.N.Y. 2016).

Assuming that the plaintiffs indirectly benefitted from the 2017 and 2018 loans, the next question is whether the plaintiffs received those benefits "in exchange for" the obligations that the plaintiffs undertook and the transfers they made in 2019. There is no evidence that the plaintiffs gave guaranties and collateral in 2019 "in exchange for" benefits that they had already received in 2017 and 2018.

TDH argues that the plaintiffs continued to receive indirect benefits after the 2019 transaction, and that the plaintiffs entered into that transaction in exchange for those benefits. For purposes of summary judgment, I assume

8

this is true. But it is not sufficient; the third element is whether the value that the plaintiffs received was "reasonably equivalent" to what they gave. The plaintiffs guaranteed a debt of about $57 million and pledged all of their unencumbered assets to secure that debt. There is no evidence that any alleged indirect benefits the plaintiffs ever received were worth anywhere near $57 million.

Second, TDH argues that its agreement to forbear from collecting its loans in 2019 benefitted the plaintiffs.[2] According to TDH, if TDH had taken steps in 2019 to collect the 2017 and 2018 loans to TKB and the other borrowers, the plaintiffs could not have drawn funds from TKB and the affiliates after 2019 to fund their operations and would have lost the opportunity to develop their properties. But TDH can show only that the plaintiffs received about $400,000 after the 2019 transaction, and no reasonable finder of fact could determine that $400,000 is "reasonably equivalent" to $57 million. Further, TDH has not attempted to provide a

---

[2] TDH points out that the plaintiffs represented that they would receive substantial benefits from the 2019 transaction. But fraudulent transfer law looks to the reality of the situation and not the documents. What matters is what benefits the plaintiffs actually received, not the representations they made to a potential lender regarding potential benefits.

9

valuation of the alleged indirect benefits, and it has the burden of proof on that issue. Finally, the 2019 transaction provided that the loan was due and payable in January 2020, or about thirteen months later. No reasonable finder of fact could find that a one-year extension of time to pay a $57 million debt was also worth $57 million.

TDH argues that it is unable to provide more evidence of the value that the plaintiffs received because the plaintiffs have failed to make discovery. It requests that the court either deny or continue the motion. TDH has not made a sufficient showing under rule 56(d)[3]. This adversary proceeding has been pending for thirteen months. TDH has had plenty of time to conduct discovery. To prevail on this issue, TDH must show that the plaintiffs received approximately $57 million of indirect benefits from TDH's loans between December 2019 and February 2021. It is highly unlikely that such evidence will appear for the first time in the next month, when the discovery period will end.

---

[3] Fed. R. Civ. P. Rule 56(d) allows a court to defer considering a motion for summary judgment or deny it if the nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.

10

TDH also argues that it is premature to quantify the value that the plaintiffs received because the plaintiffs' motion argues that the value is zero. TDH argues that they can establish there was *some* indirect benefit and the value of that benefit is a question of fact which should be resolved at trial. But the motion is not so narrowly drawn. The motion itself asks that court to determine that the plaintiffs did not receive "reasonable equivalent value," and not that they received no value. Although the memorandum in support of the motion argues that the plaintiffs received no value, it also described the applicable legal standard, including the shifting of the burden of proof to the defendants if the benefits were indirect. The motion is more than sufficient to alert TDH that the quantification of the value provided was before the court.

## IV. CONCLUSION

When evaluating TDH's arguments, it is useful to view this case from a larger perspective. In a fraudulent transfer case, "the analysis is directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost. This is so because the policy

11

behind section 548 is to preserve the assets of the estate." Wyle v. C.H. Rider & Family (In re United Energy Corp.), 944 F.2d 589, 597 (9th Cir. 1991) (cleaned up). Simply put, the 2019 transactions left the plaintiffs' creditors worse off. The transaction greatly diminished the plaintiffs' financial condition, by increasing their debt and decreasing their unencumbered assets, while provided no offsetting benefits of similar value. For the above reasons, I will GRANT the plaintiffs' motion.

**END OF ORDER**

U.S. Bankruptcy Court - Hawaii   #21-90009   Dkt # 133   Filed  05/04/22   Page 12 of 12